UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RAYMOND MASCARENAS,<br><br>  Petitioner,<br>v.<br><br>GREG SMITH, *et al.*,<br><br>  Respondents. | Case No. 3:14-cv-00054-MMD-VPC<br><br>ORDER |

I.  **INTRODUCTION**

This action is a petition for writ of habeas corpus by Raymond Mascarenas, a Nevada prisoner. The action is before the Court with respect to the merits of the claims remaining in Mascarenas' petition. The Court will deny Mascarenas' petition.

II. **BACKGROUND**

On August 31, 2009, Mascarenas was convicted, pursuant to a jury verdict, in Nevada's Second Judicial District Court, of sexual assault, and he was sentenced to life in prison with the possibility of parole after ten years. *See* Judgment, Exh. 20 (ECF No. 22-6). (The exhibits referred to in this order were filed by the respondents and are found in the record at ECF Nos. 20-22, 27 and 36.)

Mascarenas appealed, and the Nevada Supreme Court affirmed on September 29, 2010. *See* Order of Affirmance, Exh. 23 (ECF No. 22-9).

On October 6, 2011, Mascarenas filed a petition for writ of habeas corpus in the state district court. *See* Petition for Writ of Habeas Corpus, Exh. 25 (ECF No. 22-11).

Counsel was appointed for Mascarenas, and, with counsel, Mascarenas filed a supplemental habeas petition on May 30, 2012. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 27 (ECF No. 22-13). The state district court held an evidentiary hearing on March 28, 2013. *See* Transcript of Evidentiary Hearing, Exh. 34 (ECF No. 22-20). On March 29, 2013, the state district court entered an order denying Mascarenas' petition. *See* Order entered March 29, 2016, Exh. 35 (ECF No. 22-21). Mascarenas appealed, and the Nevada Supreme Court affirmed on January 24, 2014. *See* Order of Affirmance, Exh. 38 (ECF No. 22-24).

Mascarenas initiated this federal habeas corpus action on January 27, 2014, by filing a *pro se* habeas corpus petition (ECF No. 8).

Respondents filed a motion to dismiss (ECF No. 19), asserting that two claims in Mascarenas' habeas petition were not exhausted in state court, and not cognizable in this federal habeas action. After ordering the respondents to expand the record to include certain briefing of the parties before the Nevada Supreme Court (ECF No. 26), and after respondents expanded the record as ordered (ECF No. 27), on June 15, 2015, the Court granted the motion to dismiss in part and denied it in part; the Court ruled that Ground 3 of Mascarenas' petition was unexhausted, and required Mascarenas to either abandon that claim or move for a stay so that he could exhaust it in state court. *See* Order entered June 15, 2015 (ECF No. 28). Mascarenas abandoned the unexhausted claim. *See* Petitioner's Declaration, filed June 29, 2015 (ECF No. 29).

On October 22, 2015, respondents filed an answer (ECF No. 35), responding to Mascarenas' remaining claims. Mascarenas filed a reply on December 16, 2015 (ECF No. 37).

On June 22, 2016, the Court entered an order (ECF No. 38) directing respondents to further supplement the record, by filing, as exhibits, the video and transcript of Mascarenas' statement to the police. Respondents complied with that order, by filing those exhibits, on August 4, 2016 (ECF No. 42).

///

The remaining claims in Mascarenas' habeas petition are now before the Court with respect to their merits.

## III.  DISCUSSION

### A.  Standard of Review

28 U.S.C. § 2254(d) sets forth the primary standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state

///

court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## B.     Ground 1

In Ground 1 of his habeas petition, Mascarenas claims that his federal constitutional rights were violated because the jury instructions "failed to indicate that a reasonable doubt as to whether he acted under a reasonable but mistaken belief of consent . . . gave rise to a duty to acquit." Petition for Writ of Habeas Corpus (ECF No. 8) at 3-3a.

Mascarenas asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 40 at 8-10 (ECF No. 27-1 at 16-18). The Nevada Supreme Court ruled as follows:

> . . . Mascarenas claims that the jury instruction on mistaken belief of consent was inadequate, as it did not properly convey the defense theory of consent and did not restate the burden of proof. The instruction given on this issue was the instruction Mascarenas submitted and he therefore cannot now complain that the district court erred in accepting it. Additionally, the jury was instructed that the State had the burden to prove every element of the crime beyond a reasonable doubt, and we presume it followed that instruction. *Allred v. State*, 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004).

Order of Affirmance, Exh. 23 at 1-2 (ECF No. 22-9 at 3-4).

///

4

The jury was instructed regarding the elements of the crime of sexual assault, as follows:

> In order to prove the crime of sexual assault each of the following elements must be proved:
>
> (1) A person willfully and unlawfully subjects another person to sexual penetration; and
>
> (2) The act of penetration is against the will of the victim; or . . . [t]he act of penetration is under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of the perpetrator's conduct.
>
> "Against the will" means without the consent of the victim.
>
> "Victim" means a person who is subjected to a sexual assault.

Jury Instructions, Exh. 15, Instruction No. 23 (ECF No. 22-1, p. 24). The jury was instructed, as follows, regarding the issue of consent:

> To find the Defendant guilty of sexual assault, you must find that he had sexual intercourse with the prosecuting witness without her consent.
>
> Consent may be explicit, or consent may be implied from a consideration of the totality of the circumstances.
>
> In determining whether or not the Defendant believed that he had the consent of the prosecuting witness, you are to determine if, under the totality of the circumstances, a reasonable person would believe that the prosecuting witness consented.

*Id.*, Instruction No. 29 (ECF No. 22-1, p. 30); *see also id.*, Instruction Nos. 26, 27, 30 (ECF No. 22-1, pp. 27, 28, 31). And, the jury was instructed as follows, regarding the State's burden of proving every element of the crime beyond a reasonable doubt.

> Every person charged with the commission of a crime shall be presumed innocent unless the contrary is proven by competent evidence. The burden rests upon the prosecution to establish every element of the crime with which the defendant is charged beyond a reasonable doubt.

Jury Instructions, Exh. 15, Instruction No. 18 (ECF No. 22-1 at 19).

The state supreme court reasonably ruled that these instructions adequately informed the jury of the burden of the prosecution to prove beyond a reasonable doubt

///

5

every element of the crime, including the lack-of-consent element. Mascarenas points to no Supreme Court precedent — and this Court knows of none — requiring more.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. This Court will deny relief with respect to Ground 1.

### C.     Ground 2

In Ground 2, Mascarenas claims that his federal constitutional rights were violated by the introduction into evidence of a statement that he gave to the police, because the statement was not voluntarily given. *See* Petition for Writ of Habeas Corpus at 5-5b.

Mascarenas did not object to the introduction of his statement into evidence. *See* Appellant's Reply Brief, Exh. 42 at 3 (ECF No. 27-3 at 8) ("Mr. Mascarenas did not raise the question of his statement to the police in a pre-trial motion."). And, in closing argument before the jury, Mascarenas conceded that his statement was "probably not" involuntary. *See* Defense Closing Argument, Trial Transcript, July 9, 2009, Exh. 14 at 294 (ECF No. 21-4 at 57). It appears that, at trial, Mascarenas did not seriously challenge the voluntariness of his statement because, for the most part, Mascarenas did not incriminate himself in his statement, especially with regard to the important issue of consent; rather, the defense affirmatively used Mascarenas' statement as a means of putting his version of the events before the jury, without him having to testify. *See id.* at 289 (ECF No. 21-4 at 52) ("[W]e're left in this case to decide the truth of this accusation, this most serious accusation on the basis of her testimony versus the statement of Raymond Mascarenas."); *id.* at 291 (ECF No. 21-4 at 54 ("Raymond didn't testify in this case and you can't hold it against him. But you heard his story anyway. It came in through his interview. He told you what he saw and what he heard."); *id.* at 293 (ECF No. 21-4 at 56 ("So you see it's a credibility contest between what [the victim] said and what you heard from Raymond Mascarenas.").

Despite his embrace of his statement to the police at trial, Mascarenas claimed on his direct appeal, without any factual development of the claim, that his statement was involuntary. *See* Appellant's Opening Brief, Exh. 40 at 10-16 (ECF No. 27-1 at 18-24). The Nevada Supreme Court ruled on that claim as follows:

> . . . Mascarenas argues that his confession was involuntary and its admission was plain error. Mascarenas was dropped off by a family member for an interview with a detective at a Social Services building, where he admitted to sexual contact with the victim. Mascarenas was seventeen at the time of the two-hour interview and was told that his parents could be present and that he could leave at any time. The interview was conversational and Mascarenas left freely at its conclusion. Mascarenas asserts that his age and the detective's suggestion that he could "smooth things over" for Mascarenas rendered the interview coercive. In the totality of the circumstances reflected in the record, we cannot agree that his will was overborne, *see Passama v. State*, 103 Nev. 212, 214, 735 P.2d 321, 323 (1987), and conclude that none of his substantial rights were affected, *see Kaczmarek v. State*, 120 Nev. 314, 328, 91 P.3d 16, 26 (2004).

Order of Affirmance, Exh. 23 at 2 (ECF No. 22-9 at 4).

In his subsequent state habeas action, Mascarenas did not raise the claim that his statement to the police was involuntary.

"Involuntary or coerced confessions are inadmissible at trial, *Lego v. Twomey*, 404 U.S. 477, 478, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), because their admission is a violation of a defendant's right to due process under the Fourteenth Amendment, *Jackson v. Denno*, 378 U.S. 368, 385-86, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). An inculpatory statement is voluntary, and admissible as evidence, if it is the product of a rational intellect and a free will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). Coercive police activity is a "necessary predicate" to finding a confession involuntary within the meaning of the Due Process Clause. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Ortiz v. Uribe*, 671 F.3d 863, 869 (9th Cir. 2011). The test is whether, considering the totality of the circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963); *United States v. Tingle*, 658 F.2d 1332,

7

1335 (9th Cir. 1981); *see also Dickerson v. United States*, 530 U.S. 428, 434 (2000). The totality of the circumstances includes "both the characteristics of the accused and the details of the interrogation." *Dickerson*, 530 U.S. at 434; *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992). The Supreme Court has emphasized that confessions of juveniles warrant special caution. *See Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (en banc) (quoting *In re Gault*, 387 U.S. 1, 45 (1967)).

As a result of Mascarenas' failure to object to the admission of his statement at trial — and in fact his reliance on his statement in his defense at trial — along with his challenge of the voluntariness of the statement on direct appeal but not in his state habeas action, Mascarenas failed to develop the facts regarding this claim in state court. The Court's habeas review, under 28 U.S.C. § 2254(d), is limited to the record that was before the state supreme court on the direct appeal. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (federal court review under section 2254(d) "limited to the record that was before the state court that adjudicated the claim on the merits").

Despite Mascarenas' failure to fully develop the facts, there is significant support in the record for the Nevada Supreme Court's conclusion that the statement was voluntary. Mascarenas was not under arrest when he gave his statement to the police; in fact, Mascarenas contacted the police officer by telephone, and, during that telephone call, they arranged to meet. *See* Testimony of Eric Stroshine, Trial Transcript, July 8, 2009, Exh. 12B at 217-18 (ECF No. 21-2 at 36-37). When they spoke on the telephone, the police officer suggested that Mascarenas should bring his parents with him to the interview. *See id.* at 218 (ECF No. 21-2, p. 37) ("I told him that being as he was a juvenile, that it would be nice to talk to his parents, let them know what's going on and if they would like to come down, they could come down and we can all talk."). Mascarenas subsequently went into the police station of his own free will, without his parents, and, at the beginning of the interview, the police officer told him that he could leave at any time. *See id.* at 217-19 (ECF No. 21-2 at 36-38); Transcript of Interview, Exh. 54 at 2, lines 19-21 (filed under seal). There was no indication during the interview

that Mascarenas was of low intelligence or mentally impaired; Mascarenas appeared to understand the officer's questions, he responded without any hesitancy, and his responses were lucid. *See* Transcript of Interview, Exh. 54 (filed under seal). The interview was not unusually long, and Mascarenas did not express any desire to discontinue the interview. *See id.* When the interview concluded, Mascarenas left the police station.

The Court recognizes that the interviewing officer made statements to Mascarenas that may be construed as deceptive and coercive, in that they might have suggested that the officer had more evidence incriminating Mascarenas than he actually had. *See, e.g.*, Transcript of Interview, Exh. 54 at 12, lines 17-22 ("Listen, here's the thing. I — I know a lot more than you think I do, OK? And what I usually try and do, right, is . . . is like I tell you at the beginning. Be honest with me, don't jerk me around because I can smooth things over but when people lie to me that's when I think everything's a lie. Then once I think that then it goes downhill real quick, OK? Because then what I'll do is I just won't talk to anyone anymore and I'll just start throwing handcuffs on people. . . . And you don't want that. And I don't want to do that. Believe me, I don't get any enjoyment out of any of it, OK? But, I know a lot more than you think I do. . . . OK? I've been doing this job a long time and I've been around the block a few times . . . I've been in your shoes a few times. So I'm not dumb, OK? I know what you're thinking and I know how shit works. OK? So, who . . . who was there that night, bud?"); *id.* at 16, line 15 (". . . [K]eep in mind, I know things."); *id.* at 37, lines 6-7 ("She took a pretty thorough exam and um, that tells me, everything that happened that night."). However, both the Supreme Court and the Ninth Circuit Court of Appeals have held that such deception is generally within the range of permissible interrogation tactics, and, while relevant to the question of the voluntariness of a confession, do not necessarily render the confession involuntary. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (holding that a police officer's lie to defendant about his cousin confessing to the commission of a murder was "insufficient in [the Supreme Court's] view to make [an]

9

otherwise voluntary confession inadmissible"); *United States v. Crawford*, 372 F.3d 1048, 1061 (9th Cir. 2004) (instructing that trickery and deceit do not necessarily render a confession involuntary); *United States v. Orso*, 266 F.3d 1030, 1039 (9th Cir.) (en banc), cert. denied, 537 U.S. 828 (2001), overruled on other grounds by *Missouri v. Seibert*, 542 U.S. 600 (2004) (holding that an officer's misrepresentation regarding certain evidence existed did not constitute coercive conduct rendering the defendant's confession involuntary). Here, it is not clear whether, or to what extent, the interviewing officer misrepresented the evidence he had against Mascarenas, and, regardless, in this Court's view, this aspect of the officer's tactics did not render the statement involuntary.

The Court also recognizes that the interviewing police officer made comments that could be construed as misleading Mascarenas to believe that if he answered the officer's questions he would not face charges, or would otherwise receive lenient treatment. *See*, *e.g.*, Transcript of Interview, Exh. 54 at 5, lines 10-11 ("So as long as you're honest with me, hopefully we can smooth all this out."); *id.* at 5, lines 25-26 ("Seriously, because this can be fixed, or, it can't be."); *id.* at 12, lines 19-20 ("Be honest with me, don't jerk me around because I can smooth things over. . . ."); *see also id.* at 33, lines 4-6 ("Because what's going to have to happen is I'm going to have to start issuing warrants and shit like that, and I don't want to do that. But I will."). The Ninth Circuit Court of Appeals has explained that such statements by an interviewing officer can be coercive, especially where the suspect is intellectually impaired. *See United States v. Preston*, 751 F.3d 1008, 1026-27 (9th Cir. 2014) (en banc). Mascarenas was seventeen years old when he was interviewed, and, while there is no evidence that he was of especially low intelligence or intellectually impaired, he had only an eighth grade education. *See* Transcript of Post Conviction Evidentiary Hearing, Exh. 34 at 32, 35, 44-45, 51 (ECF No. 22-20 at 34, 37, 46-47, 53). Under these circumstances — especially in light of Mascarenas' age and limited education — this Court has some concern that

///

these coercive statements by the police officer may have tended to overbear Mascarenas' will.

However, at the same time, the Court is mindful that the Nevada Supreme Court ruled on this issue, and found Mascarenas' statement to be voluntary, and that, therefore, this Court is to apply the very deferential standard mandated by 28 U.S.C. § 2254(d). The issue boils down to the formulation announced in the Supreme Court's *Harrington* decision: whether "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. Taking into account the circumstances surrounding Mascarenas' statement, as disclosed in the record before the Nevada Supreme Court, this Court certainly cannot say that the ruling of the Nevada Supreme Court was so unreasonable as to be beyond debate by fairminded jurists.

Giving the state court's ruling the deference required under section 2254(d), this Court denies relief with respect to Ground 2.

**D.     Ground 4**

In Ground 4, Mascarenas claims that his federal constitutional rights were violated as a result of the victim's unsolicited statement during her testimony that she was a virgin. *See* Petition for Writ of Habeas Corpus at 8a-8b.

Mascarenas asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 40 at 24-28 (ECF No. 27-1 at 32-36). The Nevada Supreme Court ruled as follows:

> . . . Mascarenas argues that the victim's spontaneous statement during her trial testimony that she was a virgin before the assault deprived him of a fair trial. We disagree. Recognizing that the statement was unsolicited, Mascarenas declined to ask for a hearing to present evidence that the victim was not a virgin and instead suggested that the district court specifically instruct the jury to disregard the comment. The court gave that instruction and we conclude that it was adequate to cure any resulting prejudice.

Order of Affirmance, Exh. 23 at 3 (ECF No. 22-9 at 5).

///

///

11

The testimony of the victim that is the subject of this claim was as follows:

> Q. Did you think anything about your conduct that night told Raymond Mascarenas that you wanted to engage in sexual intercourse?
>
> A. I didn't want to do anything. He did it. I was a virgin before all of this.

Trial Transcript, July 7, 2009, Exh. 10B at 80 (ECF No. 20-11 at 25). Defense counsel objected, and the trial court initially overruled the objection. *Id.* The trial court subsequently heard from counsel regarding the matter, outside the presence of the jury. *Id.* at 107-11 (ECF No. 20-11 at 52-56); Trial Transcript, July 8, 2009, Exh. 12A at 116-20 (ECF No. 21-1 at 5-9). Upon the request of the defense, the trial court then reversed its ruling, and instructed the jury to disregard the victim's statement that she was a virgin. *See* Trial Transcript, July 8, 2009, Exh. 12A at. 117-20 (ECF No. 21-1 at 6-9). When the jury was next brought in the courtroom, the trial court instructed the jury as follows:

> Ladies and gentlemen, from time to time questions come up about court procedures and I thought I'd take this opportunity to talk to you a little bit about that. Often times, sometimes during trial, you'll hear attorneys stand up and object to a question or an answer. It's the attorneys' obligation to object to evidence they don't feel is proper and it's my obligation as a judge to rule on that objection. You're not to hold it against the lawyer or their client if they object. It's their obligation, their job.
>
> For example, yesterday the witness testified that she was a virgin. There was an objection to that. I overruled the objection yesterday, but after reflection last night, I realized that I was in error. And so I'm going to sustain the objection here, which means you're not to consider it.
>
> Also, you'll hear motions to strike, which means to take that evidence off the record. That motion, particularly with respect to that statement, is granted, which means you're not to consider it in your deliberations, it's irrelevant and it has nothing to do with the issues at stake here in this case.
>
> So, once again, don't hold it against the attorneys. It's my obligation to make these rulings and it's your obligation to follow the rulings of the Court. You're not to consider that statement in any deliberations that will occur in this case.

Trial Transcript, July 8, 2009, Exh. 12A at 121-22 (ECF No. 21-1 at 10-12).

State-court evidence rulings are not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the

12

result is a denial of the fundamentally fair trial guaranteed by the due process clause of the federal constitution. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986). The due process inquiry is whether the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990. A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

Here, the unsolicited statement of the victim that she was a virgin was not so prejudicial that it rendered Mascarenas' trial fundamentally unfair. As requested by the defense, the trial court instructed the jury to disregard the statement, curing any unfair prejudice to Mascarenas. *See Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) (the Court "normally presume[s] that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it").

The state supreme court's ruling on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny relief with respect to Ground 4.

**E.     Ground 5**

In Ground 5, Mascarenas claims that his federal constitutional rights were violated because the evidence at trial was insufficient to convict him of sexual assault. *See* Petition for Writ of Habeas Corpus at 8c-8d.

Mascarenas asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 40 at 28-29 (ECF No. 27-1 at 36-37). The Nevada Supreme Court ruled as follows:

> . . . Mascarenas claims that insufficient evidence supports his conviction. The victim testified that Mascarenas anally penetrated her while she attempted to resist, and this testimony alone is sufficient to uphold the conviction. *Rose v. State*, 123 Nev. 194, 203, 163 P.3d 408, 414 (2007). Nonetheless, significant corroborating evidence supports the

> conviction, including a nurse who testified that the victim's injuries were most likely the result of nonconsensual sex. We thus conclude that a rational juror could have found each element of sexual assault beyond a reasonable doubt. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); NRS 200.366.

Order of Affirmance, Exh. 23 at 1 (ECF No. 22-9 at 3).

As a matter of federal constitutional law, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing a sufficiency of the evidence claim, a federal habeas court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas court "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Furthermore, beyond the deference that the federal habeas court must afford the trier of fact, the federal habeas court must "apply the standards of [*Jackson*] with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Applying the AEDPA standard, the federal habeas court must ask "whether the decision of the [state appellate court] reflected an 'unreasonable application' of *Jackson* and *Winship* to the facts of this case." *Id.* at 1275 & n.13.

This Court agrees with the ruling of the Nevada Supreme Court on this claim. The victim's testimony was sufficient, by itself, to support Mascarenas' conviction (*see* Trial Transcript, July 7, 2009, Exhibits 10A and 10B at 12-80 (ECF No. 20-10 at 14 - ECF No. 20-11 at 25); moreover, her testimony was corroborated in many respects by other evidence, notably the evidence that seminal fluid was found on the victim's body (*see* Trial Transcript, July 8, 2009, Exh. 12A at 151-57 (ECF No. 21-1 at 40-46)), and the evidence regarding the injuries suffered by the victim (*see id.* at 175-82 (ECF No.

21-1 at 64-71)), and Exh. 12B at 183-93 (ECF No. 21-2 at 2-12)). Mascarenas asserts that there was insufficient evidence that the victim did not consent; however, this Court finds that there was ample evidence at trial showing that the victim did not consent, and that her lack of consent was plain: the victim testified that she was intoxicated to the point where she did not have control over her body (*see* Trial Transcript, July 7, 2009, Exh. 10A at 35, 37, 40-42 (ECF No. 20-10 at 37, 39, 42-44)); the victim testified that she screamed when Mascarenas anally penetrated her (*see id.* at 38-40 (ECF No. 20-10 at 40-42)); the victim testified that she tried to move away when Mascarenas anally penetrated her (*see id.* at 38-39 (ECF No. 20-10 at 40-41)); the victim testified that she resisted by turning her body, trying to move away, kicking, shoving, and trying to keep her legs closed (*see id.* at 57-58 (ECF No. 20-10 at 59-60)); the victim testified that Mascarenas and the others physically held her down while Mascarenas had sex with her (*see id.* at 39, 57-58 (ECF No. 20-10 at 41, 59-60)); the victim testified that, in the bathroom, after throwing up, she was wobbly and could not control herself, and Mascarenas held her head up by her hair with two hands, and put his penis in her mouth (*see id.* at 41-42 (ECF No. 20-10 at 43-44)); the victim testified that, before Mascarenas left, he told her not to say anything or they would kill her (*see id.* at 50 (ECF No. 20-10 at 52)); the detective who investigated the case testified that records regarding the victim's mobile telephone showed that her frequent texting ceased from about 3:17 a.m. to about 5:37 a.m., the time period during which the sexual assault likely occurred (*see* Trial Transcript, July 8, 2009, Exh. 12B at 229-31 (ECF No. 21-2 at 48-50)).

The state courts' ruling that there was sufficient evidence to support Mascarenas' conviction was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny relief with respect to Ground 5.

///

## F.     Ground 6

In Ground 6, Mascarenas claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel, because his trial counsel did not properly involve his parents in the consideration of a plea offer. *See* Petition for Writ of Habeas Corpus at 8e-8f.

Mascarenas asserted this claim in his state habeas petition, and the state district court held an evidentiary hearing, at which this claim was the primary focus. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 27 at 4 (ECF No. 22-13 at 6); Transcript of Evidentiary Hearing, Exh. 34 (ECF No. 22-20). The state district court denied the petition, ruling as follows:

> Petitioner . . . conceded that the testimony of his counsel, as well as his own testimony, indicated that counsel had communicated the plea offer to Petitioner, communicated the possible sentences under both the plea and if Petitioner was found guilty at trial, and discussed the evidence that would be admitted at trial, as well as the potential credibility issues relating to the victim's testimony. Counsel did inform Petitioner that if the jury believed the victim that that would be sufficient for them to convict him of sexual assault. Petitioner concedes that under normal circumstances counsel's actions would have amounted to effective assistance[;] he claims, however, that in this case, where Petitioner was a young man, seventeen at the time of the crime, with an eighth grade education and a lack of maturity, counsel should have done more to convey the consequences of going to trial and not pleading guilty. This, according to Petitioner, also required counsel to communicate advice regarding the plea agreement to Petitioner's parents so that they could advise him.
>
> * * *
>
> In the present case, the court finds that Petitioner's trial counsel's actions were reasonable. Counsel communicated the plea bargain to Petitioner. He also advised Petitioner of the consequences of accepting the plea as well as the potential consequences of going to trial. This is not a case where Petitioner's guilt was certain such that not accepting the plea was guaranteed to result in a longer sentence. Rather, advice to either accept or not accept the plea under the circumstances of this case would have been reasonable. As discussed by Petitioner's counsel and established at trial, the victim in this case presented credibility issues. There was a real possibility that the jury would find the victim to be incredible. The jury, however, did not, and found Petitioner guilty of sexual assault. This is the risk that Petitioner faced when he adamantly insisted he had done nothing wrong and chose to proceed to trial.
>
> Because this case presented a real possibility of acquittal, so long as counsel properly advised Petitioner of the consequences, as he did, of accepting or not accepting the plea his burden under the Sixth

16

>  Amendment has been met. Even if he had communicated with Petitioner's parents or done more to take into account Petitioner's age, education, experience, and maturity, the advice would not, and should not have changed. Whether to accept the plea bargain was ultimately up to Petitioner.

Order, Exh. 35 at 2-4 (ECF No. 22-21 at 4-6).

Mascarenas then asserted this claim on his appeal from the denial of his state habeas petition. *See* Opening Brief, Exh. 43 (ECF No. 27-4). The Nevada Supreme Court affirmed, ruling as follows:

> Appellant argues that counsel was ineffective for failing to allow appellant's parents to be present during discussions as to whether appellant should accept the State's guilty plea offer, an offer which appellant rejected. Appellant has failed to demonstrate deficiency or prejudice. Appellant does not cite to any authority supporting his proposition that an attorney representing a juvenile offender who has been certified as an adult must advise or consult with his client's parents. *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Further, the district court's findings that counsel communicated the plea bargain to appellant, that this is not a case where conviction was certain, and that appellant was adamant in refusing the guilty plea because he felt he had done nothing wrong are all supported by substantial evidence in the record presented to this court. And although both parents testified at appellant's evidentiary hearing, appellant failed to present any evidence that either parent would have counseled him to accept the guilty plea offer. Accordingly, appellant failed to demonstrate a reasonable probability of a different outcome had counsel included appellant's parents in his guilty plea discussions with appellant. We therefore conclude that the district court did not err in denying this claim….

Order of Affirmance, Exh. 38 at 2-3 (ECF No. 22-24 at 6-7).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court has adjudicated a claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

The Nevada Supreme Court reasonably affirmed the denial of Mascarenas' claim of ineffective assistance of counsel. The evidence presented at the evidentiary hearing showed plainly that Mascarenas' trial counsel informed him of the plea offer, and advised him regarding the possible sentence he faced if he pled guilty under the plea offer and the possible sentence he faced if he went to trial. *See* Testimony of Scott Edwards, Transcript of Evidentiary Hearing, Exh. 34 at 12-19, 30 (ECF No. 22-20 at 14-21, 32); Testimony of Raymond Mascarenas, *id.* at 37-40 (ECF No. 22-20 at 39-42). And, the evidence showed that, despite the risk, Mascarenas insisted on rejecting the plea offer and going to trial. *See* Testimony of Scott Edwards, *id.* at 14 (ECF No. 22-20 at 16); Testimony of Raymond Mascarenas, *id.* at 37, 39 (ECF No. 22-20 at 39, 41). The

Court knows of no authority, and Mascarenas has cited none, imposing a requirement on counsel to involve his 18-year-old client's parents in the consideration of a plea offer; counsel's failure to do so was not objectively unreasonable.

Moreover, Mascarenas was free to consult with his parents regarding the plea offer, and did in fact do so. *See* Testimony of Raymond Mascarenas, *id.* at 37, 40 (ECF No. 22-20 at 39, 42).

The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny relief with respect to Ground 6.

### G.    Certificate of Appealability

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

Applying this standard, the Court finds that a certificate of appealability is not warranted with regard to any of Mascarenas' claims.

It is therefore ordered that the petition for writ of habeas corpus (ECF No. 8) is denied. Petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court is to enter judgment accordingly.

DATED THIS 14th day of September 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE